## GORMAN v. AMERICAN GENERAL INS. CO.

### No. 11396.

Court of Civil Appeals of Texas.
San Antonio.

March 1, 1944.

Rehearing Denied April 5, 1944.

Second Rehearing Denied May 3, 1944.

O. Kennedy, of Beeville, for appellant.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, and Alex Cox, of Beeville, for appellee.

NORVELL, Justice.

This is a workman's compensation case. Judgment on an instructed verdict was rendered in favor of the insurance carrier, American General Insurance Company.

The case is submitted here upon the brief of appellant, Mollie Gorman, widow of Fayette Gorman, deceased. At the time of his death, on May 8, 1943, Fayette Gorman was about sixty-four years of age and employed as a janitor by Brown, Bellows & Columbia at Chase Field, a naval air base in Bee County, Texas. No autopsy was performed but it is indicated that Gorman's death was caused by myocardial failure. It also appears that Gorman was suffering from heart disease for at least two and a half or three months prior to his death.

Immediately prior to his death, Gorman had been walking upon a path which connected the "time office" with the "personnel building" at Chase Field; these buildings being about 300 to 400 yards apart. He was carrying a small (half-gallon) can of sweeping compound. The path was traversed by a ditch about two feet deep and five or six feet wide. The evidence indicates that the sides of the ditch where the path crossed it had been worn down so that the slopes into and out of the ditch were gradual rather than steep or abrupt. Shortly after having crossed this ditch and while walking along the path, as above indicated, Gorman fell dead.

In our opinion, the facts disclosed by the record here bring the case squarely within the holding announced in Southern Casualty Co. v. Flores, Tex.Com.App. 1 S. W.2d 260. The judgment of the trial court is accordingly affirmed.

On Motion for Rehearing.

Appellant has filed a vigorous motion for rehearing in which she asserts that the evidence was sufficient to take the case to the jury upon the theory that Fayette Gorman over-exerted himself in performing his duties as janitor while in the employ of Brown, Bellows & Columbia; that this over-exertion extended over a period of about three months and was a producing cause of Gorman's death from heart failure.

Appellant's position may be made clearer by giving the substance of some of the testimony of the only medical expert who testified below. As to the examination of the body after death, the doctor stated: "Well, it wasn't a post-mortem, purely a —just checked on his appearance in a general way and made a cursory examination of his body looking for evidences of external wounds and little things like that, but not an autopsy. * * * The examination didn't reveal anything definitely, of course, except that he was a dead man."

In answer to a hypothetical question, assuming that Gorman was sixty-three or sixty-four years of age, that he was well and strong when he commenced working for Brown, Bellows & Columbia, that he gradually began to lose a great deal of weight, that his face got long and thin, that he would be troubled with pains in his right arm and shoulder, that there was quite a bit of swelling in his feet, and that his breathing was short and hard, the expert stated that, in his opinion, Gorman was suffering from myocarditis. The suffix "itis" is used in "medical terms to denote an inflammatory disease of." Myocarditis is an inflammatory disease of the myocardium—the muscular part of the wall of the heart. Webster's New International Dictionary. However, the expert seemingly intended to indicate by this term, a slow weakening of the muscles of the heart caused by either disease or over-exertion. The pains in the arm and shoulder, according to the expert, indicated "coronary trouble, that is hardening of the arteries, and that would indicate some infection of those arteries, either sclerosis or probably embolism."

We quote the following question and answer, which gives the expert's conclusion as to the cause of death:

"Q. Now, there is testimony here to the effect that he was a janitor in two buildings out at the airbase at the time that this happened, and that he had been working there approximately three months when he died. The testimony further indicates that these symptoms first began to appear about three weeks after he started working at the airbase. What was the effect of that work, in your opinion, on this man? A. Well, as stated previously, any work that this individual might have done which was beyond the power of his evidently senile heart would tend to bring about a fatal result. We recognize the fact that the heart, just like any piece of machinery, is good for just so many years. Like any piece of machinery, ordinary wear and tear will bring about some deterioration. That deterioration brought about by wear and tear coupled with over-exertion brought about his death. That's the conclusion we come to from the testimony and from the appearance of the patient."

On cross-examination the doctor testified as follows:

"Q. And by over-exertion you mean, not what would be over-exertion for a normal man, but you mean any exertion by a man with a heart in the condition that this man's heart was in? A. That's right.

"Q. And you can't pin it down to any one single bit of exertion, but it came on gradually during that two or three months' period? A. It came on gradually during that two or three months' period of time. * * *

"Q. Over a considerable period of time? A. Yes, sir. His death was sudden, but its cause was not.

"Q. Over a period of two or three months? A. Yes, sir. It couldn't be attributed to any one particular incident during that period of time.

"Q. And it might have happened down here on the street or anywhere else? A. Yes, sir."

■ Appellant's theory of recovery specially urged on rehearing overlooks the fact that under the Texas statute, Vernon's Ann.Civ.St. art. 8306 et seq., for an injury to be compensable it must be "accidental." As stated in Aetna Life Ins. Co. v. Graham, Tex.Com.App., 284 S.W. 931,

933: "Our statute has never gotten away from the central thought that the injury must be accidental in its nature."

In Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 467, it is said that: "What is termed an accident must be something out of the ordinary, unexpected, and definitely located as to time and place. If the injury is incurred gradually in the course of employment and because thereof, and there is no specific event or occurrence known as a starting point, it should be held to be an occupational disease and not an injury resulting from accident. Tintic Milling Co. v. Industrial Commission, 60 Utah 14, 206 P. 278, 23 A.L.R. 325."

Regardless of whether or not the cause of Gorman's death can be properly classified as an occupational disease, said death was not due to an "accidental injury," as that term is defined by the authorities. Cases from States whose Workmen's Compensation Acts provide that an injury to be compensable must be accidental in nature are persuasive upon the point involved here. The nearest case upon the facts that we have been able to find is that of Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, which cites and follows Tintic Milling Co. v. Industrial Comm., 60 Utah 14, 206 P. 278, 23 A.L.R. 325. See also Frederickson v. Industrial Commission, 68 Utah 206, 249 P. 480.

The motion for rehearing is overruled.